Gene Rees, USC Immigration Clinic Pro Bono Counsel for Mr. Henry Ba I'd like to reserve four minutes in rebuttal and I'll keep an eye on the clock. Could I ask you to speak to us a little louder, Counsel? Sure. Mr. Ba is an ethnic deola from the Casamance region of Senegal who is associated with the MFDC. The MFDC is a group that advocates for the independence of Casamance from Senegal and in the 1990s has resorted to violence to achieve those ends. Whether Mr. Ba is ineligible for asylum and withholding because he is subject to the terrorist bar under 8 U.S.C. section 1182 A.3.B is not before this court. Mr. Ba is asking the court to review his applications for asylum, withholding, and CAT. The denial of his applications for asylum, withholding, and CAT. Well, it's not before the court, you say, but isn't it determinative? Wasn't there a finding made? There was a finding that was, yes, a finding was made, which is limited to his application for adjustment of status. But doesn't that automatically make him ineligible for asylum under 1158 B.A. 4? Well, the basis, yes, he is ineligible for asylum if there is a terrorist bar. But the basis for the IJ's finding in the limited context of the adjustment that the terrorist bar applied was based on adverse credibility. And the reason for the denial of the asylum and withholding was based on adverse credibility. Aren't there separate concepts, the asylum request and withholding request? Yes. Okay. I guess I have trouble because it seems to me given that 1182 A.3.B applies, then we have no jurisdiction to review the asylum claim. Where am I wrong? Well, the asylum claim was not denied because the terrorist bar applied. The asylum claim was denied because of the adverse credibility determination, and this court can review the adverse credibility determination. And the terrorist bar was based upon the adverse credibility determination. So the terrorist bar, the court never reached the terrorist bar. The BIA never relied on the terrorist bar to affirm the denial of his asylum application. That's correct. Is that right? That's correct. And we're not appealing the denial of the adjustment application today. Let me ask you this, though. If you were ultimately to prevail on your argument regarding the adverse credibility determination, if it were to go back to the BIA and back to the IJ, couldn't they just then say, well, we're going to let the terrorism bar apply? They could, except if Mr. Baugh is found to be credible, then his statements about his involvement with the MFDC do not support a finding of the terrorism bar. So you're not challenging the denial of adjustment of status? Correct. Right. And that was denied because of the terrorism bar? Correct. Mr. Baugh. Would the terrorism bar just go away if you prevail here? Well, this court can only review what the BIA relied on in denying asylum and withholding in CAD. But it's in the record. It is in the record, Your Honor, but it's based on subsequent testimony as well. So the court found that Mr. Baugh was adversely credible in the determination of asylum and withholding. Testimony four years later was relied upon by the judge to find that the terrorist bar existed. That testimony was related to adjustment and to his inadmissibility under adjustment. So this court cannot make an independent finding regarding the terrorist bar and apply that to asylum and withholding because that was not relied on and it wasn't even reached by the BIA. For purposes of withholding, is it still necessary to reach the credibility determination? For the purpose of withholding? Yes. Because the withholding was denied because of the adverse credibility determination. The bar doesn't apply to that. Well, the bar does apply to withholding, but you have jurisdiction to review that. The bar does apply to withholding, Your Honor. It applies to both asylum and withholding. Correct. Okay. So in your blue brief, you started out with your argument focused on the denial of deferral of removal under CAT. Yes. And so the court doesn't even need to reach the issue of adverse credibility to find CAT because the issue on adverse credibility is the level of Mr. Baugh's involvement with the MFDC. But under CAT, the court, the BIA, did not even consider all the factors that are relevant. And this is just like Camalthus versus INS, where the adverse credibility determination does not render Mr. Baugh ineligible for CAT. And the BIA failed to consider any of the factors that go towards CAT, including his being an ethnic deola, his family member's association with the MFDC, his association with the MFDC. Even if it's significant or not significant, the judge didn't consider that. And in addition, this is a unique case because the adverse credibility finding is not whether or not certain facts exist, but whether or not certain facts exist in a certain way. And so the board failed to consider how the adverse credibility determination actually impacted the consideration of CAT, especially if Mr. Baugh's involvement in the MFDC was significant. It would increase the risk of torture for Mr. Baugh. What do we do with the State Department reports? Well, the State Department reports on their own would establish that Mr. Baugh, would compel a finding that Mr. Baugh is more likely than not to be tortured. For example, if I could just have a moment here. The country condition reports, the State Department reports state that being an ethnic deola on its own is a grounds for arbitrary arrest, detention, torture, and extrajudicial execution. The Amnesty International 1998 report says that most of the arrested appeared to be prisoners of conscience because they were members of the deola community and held without any evidence of individual responsibility for active violence. So Mr. Baugh's deola ethnicity on its own supports the finding, and Kamaltha says you can look at country conditions alone to find that, to compel a grant of protection under the Convention Against Torture. Furthermore, once arrested, the country conditions do indicate that, and I'm reading from the 1998 Amnesty International report, torture, systematic use of torture against virtually every detainee occurs, and people have been imprisoned because they were members of the deola ethnic group, and for that reason alone considered to be potential rebels. The BIA never addressed this information in denying Kat. The BIA focused on historical facts, meaning the testimony of Mr. Baugh's past torture, but that was not looking into the country conditions. Furthermore, the past torture of Mr. Baugh is plausible, and I would bring the court's attention to the fact that this is a pre-Real ID Act case, and so there is a more rigorous scrutiny of the IJ's adverse credibility determination. Regarding Mr. Baugh's torture, there's three reports from doctors corroborating, one that the physical injuries remaining are consistent with his description of the torture that he received when he was detained. Two doctors found that he had PTSD resulting from the trauma he experienced from torture. The government points out that there are these letters from family members that don't mention that he was tortured, but the government mischaracterizes that as refuting his torture. That's unpermissible speculation because there's no information in the record what the writers of the letter were told, what information they were requested to provide, so the fact that it doesn't mention Mr. Baugh's specific torture doesn't refute that it ever occurred. So this goes to the adverse credibility determination. Yes, Your Honor, because there are plausible explanations for these discrepancies in the adverse credibility determination, and under the Real ID Act, these minor details which are supported by the doctor's reports in which the letters from the family do not refute the torture, these are the only parts of the adverse credibility that go to the heart of the matter, meaning his fear of persecution. The other aspects of the adverse credibility determination go just to the level of his involvement in the MFDC. You were going to save some time. Yes, thank you. I'm going to do that right now. Thank you. Good morning, Your Honors. May it please the Court, Stephanie Hennis for Respondent. In this case, Mr. Baugh has provided and retracted and adjusted the story of his involvement with the MFDC on several occasions. In fact, his petition for review seems to be a way to show excuses for the inconsistencies in his multiple declarations, his rebuttal, his testimony in immigration court. His change in story seemed to just focus on the level of his involvement. It doesn't solely involve the level of his involvement. Where else was it that his recitation of what happened to him changed? What other areas? One of the ways that his story did change, and this is connected to the immigration judge's finding about how he had a letter from an uncle whom he claims was actually arrested and detained with him and then tortured at exactly the same time. And the letter that he provided from the uncle did not say anything about Mr. Baugh actually being tortured. Now, counsel subsequently has tried to say, oh, well, there's no evidence explaining why he would have submitted that letter, but he submitted that letter in support of his asylum application to help to bolster his application and show that he is entitled to the relief that he sought. Additionally, the interview that he had with the asylum officer. Was there anything in the record that suggested that Mr. Baugh contacted his uncle and said, this is what I want you to write? There isn't, but he was given an opportunity throughout his ‑‑ he had two hearings regarding his applications and he was given lots of opportunities to explain the various inconsistencies in his testimony. And he did not provide any testimony explaining that he simply wanted a letter from his uncle to describe what his uncle had experienced. I also do want to point out to your honors that at his asylum interview, he explained that this arrest and torture occurred in 1996. Now, I'm cognizant of the court's precedent about dates. However, if you look at the context of when he describes this to the asylum officer, it is done in the context of explaining that this event occurred very close in time to his departure from Senegal and arrival in the United States. And that is the main crux of his past mistreatment claim. So at one point he claimed that this occurred in 1986 and at the asylum interview he said that it occurred in 1996. So that corresponds with the immigration judge's focus on the letters. I thought the ‑‑ when they did the asylum interview with him, they concluded ‑‑ they found him believable, credible. They did find him credible, your honor. They said, you know, you appear to qualify, but for his involvement with providing terrorist material, terrorist support. Yes, your honor, that's true. However, at that point, the asylum officer only had the written declaration that he had provided and his testimony. When you move forward to him then submitting a new declaration that reverted back to that prior date. So when he submitted his ‑‑ Which date, the 1986 date? Yes, so he went from 1986 to 1996 and the asylum officer was willing to credit his statement that he had just provided the wrong date. But then subsequently he went back to that 1986 date yet again. So I point this out as a way of showing that while there are significant inconsistencies in this record regarding the petitioner's involvement with the MFDC, whether he recruited for them when he recruited, whether he provided financial support for them, there's also some questions regarding his claimed mistreatment in Senegal. Counsel, if we agree with you on the adverse credibility determination, what issue does that go to? It obviously goes to the cat protection in the form of deferral. Does it go to any other issue in this case? So it goes to all of the issues in this case. The government argued in its brief that the court didn't need to reach the adverse credibility finding for asylum and withholding due to the terrorism bar. And I can go back to that if your honors would like, but there is a very strong adverse credibility finding in this case. So the court could still deny asylum and withholding based on the adverse credibility finding if it so desired. What's your position on jurisdiction? Our position is that the court doesn't have jurisdiction to review the asylum denial because the petitioner was found. I recognize that he was found to have the terrorism bar applied to him as part of his adjustment application. However, that's not an inquiry that is specific to a particular application for relief. The statute provides that if a person is found to be inadmissible for having engaged in terrorist activity, that finding then dictates that he is ineligible for asylum and withholding. That finding on inadmissibility was relevant to adjustment because a person cannot adjust status without being admissible to the United States. Let me ask you a question. This is where I get kind of confused in this case about how all of these things relate to each other. Because I'm looking at the BIA decision that I think is before us, and that's dated March 4, 2009, and I don't see any discussion of this terrorism bar at all. It's all called a more traditional immigration case that we see all the time. If we don't have a decision from the BIA on the applicability of the terrorism bar, how do we review it now? Well, you do have a decision from the BIA on the applicability of the terrorism bar. It's the decision that the petitioner has said this court doesn't have jurisdiction to review, the adjustment denial. The petitioner has approached this case as a way to only look at asylum, withholding, and CAT when the board has already made the relevant determination as to whether this individual is eligible for asylum and withholding. And the fact that that didn't come in the asylum and withholding context doesn't make a difference because it is a finding regarding inadmissibility. And that's the 2013 decision? That's the 2013 decision, Your Honor. And I'm not saying this is right or wrong. I'm just wondering, do you have any authority that allows us to look to something in 2013 or later to eventually cancel an appeal from 2009? Well, I think the way that we approached this in our briefing wasn't that it cancels an appeal, but simply that if the court were to conclude that the petitioner, that the adverse credibility finding in this case was an error, that remand would be futile because what we have right now is an unchallenged determination by the board that he's inadmissible for providing material support to a terrorist organization. And that decision renders him ineligible for asylum and withholding. So that was the way that we had parsed this out in our brief. I want to turn a little bit to these. Do we still have jurisdiction to review the adverse credibility determination as it might relate to CAT relief? Yes, Your Honor, you do. Because CAT, so the jurisdictional, the court does not have jurisdiction to review whether an individual had engaged in terrorist activity for the purposes of asylum. That is the only application that it applies to. And withholding, according to counsel. Excuse me? And withholding of removal. It applies to withholding. So the material support of terrorism bar applies to withholding, but the court still has jurisdiction to review that. The jurisdictional bar only applies to asylum. I see. However, the petitioners in this case have stated repeatedly that they're not seeking review of that. And we talked about this in our brief. The adverse credibility finding is relevant to CAT. And I want to spend a little bit of time discussing this because the petitioners have made various arguments about the way that the immigration judge and the board handled the CAT claim. Now, it's well established by this court's precedent that when a person has an asylum claim and then uses that same set of facts to premise the CAT claim, the adverse credibility finding is relevant. However, it is not dispositive. And that is not the way that the agency approached this case. Both the immigration judge and the board, after recognizing and, well, the immigration judge, after issuing an adverse credibility determination, and the board, after affirming that, recognized that the same claim essentially applied to the CAT claim. But they didn't stop there. There's an analysis of the country conditions evidence. The immigration judge, in particular, noted that there's been a change for the better in country conditions. And that's something that the petitioners overlook in their brief. They like to focus on evidence from the late 1990s. However, the 2006 Department of State Human Rights Report and other evidence in the record, I can give, it's at 1073 and 1174, shows that there was a December 30, 2004, ceasefire between the MFDC and the Senegalese government. This included a pledge to reintegrate former combatants and rebuild the region. And the Senegal legislature also voted unanimously to grant amnesty to MFDC fighters for all crimes related to the war efforts. And at 1174, one of the country conditions documents that the petitioner provided describes the peace process as being irreversible. So while the government does not seek to downplay that there were certainly some major, there was violence between the MFDC and the Senegalese government and that it impacted people in the region, there has been a positive change. Counsel, you heard opposing counsel suggest that the State Department report in and of itself supported her position. What's your response? The government disagrees with that. I would note that the Department of State report, to the extent that the petitioner is relying on his deola ethnicity, it doesn't even mention that group in the most recent State Department report in the record. It's also a very high bar. The Convention Against Torture Claims require that an individual show that it's more likely than not that he would be subjected to torture. And this Court's review dictates that there needs to be sufficient evidence to compel the conclusion that that would be the case. And once you strip Mr. Bas' incredible testimony from this analysis, the Court's left with simply some evidence of past issues in the 1990s regarding the way that deola individuals were treated in Senegal. And that's simply not enough to meet the burden here. I also do point out that the IG, the Board decision in its last sentence, after recognizing that the adverse credibility finding is implicated here, then cites the exhibits that have the State Department report, and it cites all of the country conditions evidence that the petitioner cited. So while it's not a long analysis of the evidence, the evidence that was provided did not require a lengthy explanation, particularly when taking into account the adverse credibility determination here. In evaluating the Board's adverse credibility determination, the asylum application was filed before the Real ID Act. Yes, Your Honor. So it's the old standard that applies. Yes, Your Honor. The discrepancies have to go to the heart of the claim, right? Yes. So is that the case here with respect to the discrepancies regarding his testimony about the level of his involvement with the MFDC? Yes, Your Honor. And the nature of his claim for asylum? Yes, Your Honor, and I think this is why I bring up the varying dates that were provided for the torture that he claimed to have experienced. I see I'm about to run out of time. The reason I bring this up is that in one version of events, the torture happened in 1996. He had already become an MFDC member. He actually provides accounts of working with people who were the actual leaders in the MFDC. That's strong evidence that any kind of harm that he would have experienced was very much connected to his involvement with the MFDC. And so being able to parse out what kind of involvement he had and whether he was very involved with the group and when it occurred is relevant to his torture claim. I see that I'm out of time, Your Honors. Thank you. Thank you. Regarding the terrorist bar and whether or not this court has jurisdiction to review, the IJA found in finding that the material bar rendered Mr. Baugh inadmissible for adjustment stated that we don't know the extent of respondents' participation with the MFDC. So the judge found that because they don't know the extent of the participation that Mr. Baugh had failed to meet his burden to show he wasn't barred by the terrorist bar. And the IJA also based this on additional inconsistent testimony. That additional testimony was not in front of the BIA in determining the asylum and withholding and CAT applications. Furthermore, the government argues that even if this court were to find that Mr. Baugh was credible, that it would be futile to remand because of the terrorist bar. The terrorist bar rests on him not being credible, on his testimony regarding his minimal association and involvement with the MFDC. So if this court were to found that he is credible, then the case would have to be remanded so that the BIA could engage in an evaluation of whether or not his participation or involvement rises to the level of material support because the basis for material support was on the judge saying, we don't know what the basis of your involvement was. So it isn't futile. It's required. Turning to the CAT claim, the BIA found, specifically said, on page two of its decision, that the CAT claim rests on the same set of historical facts and there was no- Yes. No, yes, the BIA decision, the 2009 BIA decision regarding the denial of CAT. In the 2009 decision on the second page, the BIA stated that there was no independent evidence regarding whether it was more likely than not Mr. Baugh would be tortured by the Senegalese government. The fact that the BIA says there's no independent evidence is highly indicative of the fact that in the form of country conditions and that the BIA didn't consider. So the fact that the BIA lists some exhibits does not mean that it engaged in a meaningful consideration. Furthermore, the IJ's consideration of the ceasefire, which counsel alludes to, I don't think can be inferred to be such a consideration. The IJ simply says, and this is on page 610 of the certified administrative record, that problems still exist and there are still human rights violations being committed, but at least there are matters that have occurred which seem to show promise for the resolution of the conflict. Now, this is not a finding of changed circumstances. This is not an engagement in the likelihood of future torture. This is not a consideration of the factors that the judge is required to consider for CAT. And because the judge didn't engage in any evaluation of the country conditions evidence or of the factors that the implementing regulations say the judge needs to consider in the totality of the record, then the BIA's denial of CAT should be reversed. Okay. Thank you. Counsel, just a curiosity, I don't see your name on the brief. Are you with the Westerman firm? No, Your Honor. We are new counsel, USC Immigration Clinic. Ms. Faircloth, I have substituted in as counsel, so the firm is no longer representing Ms. Faircloth. Okay. And you're appearing pro bono? That is correct, Your Honor. Well, on behalf of the court, I thank you very much for your presentation. We all do. Thank you. Thank you very much. Thank you, counsel. The matter is submitted at this time.
judges: O'scannlain, Paez, Owens